LOUIS SALERNO, PROSECUTOR, v. CITY OF PASSAIC
ET AL., DEFENDANTS.

Submitted December 3, 1914—Decided December 21, 1915.

1. The general language of the Commission Government act of 1911
   (*Pamph. L., p.* 462)—*held*, not to confer upon municipalities
   adopting that act the power of regulating the traffic in intoxi-
   cating liquor.
2. The power conferred by the Commission Government act of 1911
   of enforcement of ordinances by imposition of reasonable fine
   or imprisonment, does not extend to ordinances relating to the
   traffic in intoxicating liquor.

On *certiorari.*

Before Justices SWAYZE, PARKER and KALISCH.

For the prosecutor, *Andrew Foulds, Jr.*

For the defendant, *Albert O. Miller, Jr.*

The opinion of the court was delivered by

PARKER, J. Prosecutor was convicted in the police court
of Passaic of selling beer without a license in violation of
section 1 of an ordinance of that city, approved August 23d,
1912, and sentenced to pay a fine of $250. On a review of
the proceedings by a judge of the Passaic county Common
Pleas, pursuant to the statute of 1895, page 764 (*Comp.
Stat., p.* 408), or of 1908, page 442 (*Comp. Stat., p.* 1868),
the conviction was affirmed; and was brought here by
*certiorari.*

The fundamental question is whether the ordinance is
authorized by law. It is concededly not authorized by the
charter of Passaic city (*Pamph. L.* 1873, *p.* 484), for by
section 26, page 495, the penalties authorized are a fine not
exceeding fifty dollars or imprisonment not exceeding ten

days. The ordinance of 1912 does provide a punishment by a fine of $250 for the first offence, and increased penalties for subsequent offences. To support it, the city invokes the adoption in 1911 of the Commission Government act (*Pamph. L.* 1911, *p.* 462), and relies on the powers conferred by that act on all municipalities that adopt it. Reliance is also placed on the Police Court act of 1910, page 112 (*Comp. Stat., p.* 4005) ; but that act manifestly confers no powers of municipal legislation. If the ordinance can stand at all, it must do so by virtue of the Commission Government act. Section 8 of that act, as amended in 1912 (*Pamph. L., p.* 643, 650) provides that—

"All cities adopting the provisions of this act shall be and are hereby vested with the general powers and authority to enact and enforce by imposition of reasonable fines or by imprisonment or both all ordinances necessary for the protection of life, health and property; to declare and prevent and summarily to abate nuisances; to preserve and enforce the good government and general welfare, order and security of such city, and shall have all powers necessary for its government not in conflict with the laws applicable to all cities of this state or the provisions of the constitution. ⋇    *    *

"All ordinances or resolutions heretofore passed in any such cities, not inconsistent with the rights and powers herein granted, shall remain in full force and effect until altered or repealed by the commissioners in the manner herein provided."

This is the portion of the act invoked by the city, and unless a power to regulate the sale of intoxicating liquor can be fairly read therein, we are relegated to the charter for that power. For the charter remains unimpaired except as altered by the act or by other general legislation. In *Salter* v. *Burk,* 83 *N. J. L.* 152, we said: "The terms of the act disclose that it was not intended in any sense to be a charter or grant of municipal power, except in a most general way. The management of municipal affairs is in-

trusted to a board of commissioners, but it largely leaves the mechanism of the city's government and the provisions of the charter untouched. It does not alter general laws or charter provisions relating to the government of the city except when inconsistent with its provisions." So in *Delaware River Transportation Co.* v. *Trenton*, 86 *Id.* 48, 50, *affirmed Id.* 679, we said, "there were thus left in operation in the city * * * all pre-existing statutes thereto applicable * * *" and as pointed out in that case, the amending act of 1912, *supra*, emphasized this by adding at the end of section 4 this clause: "All acts general and special, relating to such city, shall, except so far as is inconsistent with this act, apply to such city, and such city shall have and exercise the powers and duties thereby imposed."

The question, then, is whether the parts of section 8 above quoted, conferring powers on the cities adopting the act, are inconsistent with the charter powers relating to intoxicating liquors. It will be observed that there is no express mention of the subject of intoxicating liquor; the subjects mentioned are the protection of life, health and property; nuisances; the good government, welfare, order and security of the city, and generally all powers necessary for its government not in conflict with the laws applicable to all cities of this state or the provisions of the constitution. If this general language of section 8 is to be construed as covering the subject of regulating the sale of intoxicating liquors in the city, it would, as we think, be inconsistent with the charter provisions and would supersede them *pro tanto*. But we do not think that the legislature intended this subject to be embraced within the general language conferring powers of city government. The regulation of intoxicating liquor traffic has been always dealt with by the legislature in an exceptional way. *Paul* v. *Gloucester*, 50 *N. J. L.* 585, 595. We are not aware of any instance in which a municipality has even claimed, much less been held by the courts, to be authorized to regulate the liquor traffic by virtue of mere general language conferring powers of government and preser-

vation of order and the promotion of general welfare. Numberless cases might be cited in which the statute conferred such power in express terms. A very recent one is *Leeds* v. *Altreuter,* 84 *Id.* 722. The Excise Commission acts (*Comp. Stat., p.* 2888, &c.) are examples of general municipal legislation of this character; and of the numerous special charters dealing with the subject specifically, that of Boonton (*Wilson* v. *Boonton,* 88 *Atl. Rep.* 626), Kearny (*Page* v. *Swithenby,* 87 *N. J. L.* 459), Gloucester (*Miner* v. *Larney, Id.* 40), and Passaic itself, are the latest to come under judicial examination.

In view of these facts, that the liquor traffic is a special subject of legislative cognizance, and up to the passage of the Commission Government act always dealt with by express language, whether in general legislation or city charters, we repeat that something more than language conferring general municipal govermental powers is needed to indicate the intent of the lawmaking body that a municipality by adopting the act by popular vote may take to itself a general undefined control of the liquor traffic. For the power to impose "reasonable fines" conferred by the act of 1911 is coupled with the power of enactment; that is, the commission may pass an ordinance regulating a subject within the purview of the act, and prescribe a reasonable fine for its violation. We consider that the power to pass ordinances regulating the liquor traffic was not conferred by the act of 1911, and hence, though it existed to a certain extent under the charter, the penalty is limited to that which was authorized by the charter, viz., ten days' imprisonment or $50 fine. A penalty of $250 being beyond the power of the commission to prescribe in a liquor case, the conviction must be set aside.

This result makes it unnecessary to discuss the other reasons assigned.